IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Civil Action No. 22-cv-03037-RMR-SKC

SAFECAST LIMITED,

     Plaintiff,

v.

DISH NETWORK CORPORATION,
DISH NETWORK L.L.C., and
DISH TECHNOLOGIES L.L.C.,

     Defendants.

---

**ORDER**
**GRANTING DEFENDANTS' MOTION FOR STAY (DKT. 58) AND**
**DENYING DEFENDANTS' MOTION TO DISMISS (DKT. 31)**

---

This patent case centers on allegations by Plaintiff SafeCast Limited that Defendant Dish Network L.L.C. and Defendant Dish Technologies L.L.C. (together, Defendants)[1] infringe on United States Patent No. 9,392,302 ('302 Patent). Dkt. 19, pp.4-5.[2] The matter is presently before the Court on Defendants' Motion to Dismiss

---

[1] Plaintiff filed the First Amended Complaint for Patent Infringement (Complaint), the operative complaint, on December 1, 2022. Dkt. 19. The Complaint dropped all allegations against Defendant Dish Network Corporation. While the parties represented to the Court that they would jointly file a motion to correct the caption, no such motion has been filed. *See* Dkt. 47, p.1 n.1.

[2] The Court uses "Dkt. ___" to refer to docket entries in CM/ECF.

Pursuant to Rule 12(b)(6) (Motion to Dismiss), Dkt. 31, to which Plaintiff filed its Response, Dkt. 43, and Defendants filed their Reply in support of their Motion to Dismiss, Dkt. 45. Also before the Court is Defendants' Motion for Stay Pending *Inter Partes* Review (Stay Motion), Dkt. 58. Although Plaintiff represented to Defendants that Plaintiff opposed the Stay Motion, Dkt. 58, Ex. A, p.1., Plaintiff did not file a response to the Stay Motion. Following Plaintiff's failure to file a response, Defendants filed their Notice of Plaintiff's Failure To Oppose Motion To Stay Pending *Inter Partes* Review, Dkt. 60. The Court carefully reviewed the Motions and associated briefing, the Complaint, relevant parts of the record, and applicable law. No hearing is necessary. For the reasons set forth below, the Court GRANTS the Stay Motion and DENIES WITHOUT PREJUDICE the Motion to Dismiss. The Court addresses the Stay Motion first.

## I.    PROCEDURAL HISTORY

Plaintiff originally filed this lawsuit on June 27, 2022, in the Western District of Texas and asserted that Dish Network Corporation was infringing upon the '302 Patent. Dkt. 1. After two extensions of time for Dish Network Corporation to answer the complaint, *see* Dkts. 7, 9, the then-parties filed a joint motion on September 13, 2022, to transfer the case from the Western District of Texas to the District of Colorado, *see* Dkt. 10. The then-parties agreed to two additional extensions of time for an answer to be filed. *See* Dkts. 11, 12. On November 22, 2022, the Court in the Western District of Texas granted the joint motion to transfer the case to this District.

2

Dkt. 13.

On December 1, 2022, Plaintiff filed its First Amended Complaint for Patent Infringement, the operative complaint, adding two defendants – Dish Network L.L.C. and Dish Technologies L.L.C. – and dropping any allegations against Dish Network Corporation (although Dish Network Corporation remains in the case caption). Dkt. 19. Following another unopposed motion for an extension of time to file an answer, Dkt. 25, Defendants filed their Motion to Dismiss on January 6, 2023, Dkt. 31. Plaintiff filed its Response to the Motion to Dismiss, Dkt. 43, and Defendants filed their Reply, Dkt. 45.

Meanwhile, on February 24, 2023, Defendants filed their Motion for a Protective Order, noting that such a motion was due that day pursuant to D.C.COLO.LCPtR 3(c). Dkt. 44, p.1. Defendants represented they sought "repeated requests for input or revisions to its proposed protective order," but that Plaintiff "failed to respond." *Id*. Plaintiff later filed its "Notice of Nonopposition [sic] to Defendant's [sic] Motion to Enter a Protective Order" on March 2, 2023, noting that Plaintiff did not oppose Defendants' proposed protective order. Dkt. 48. The Court entered the Protective Order on March 8, 2023. Dkt. 51.

Concurrently, Plaintiff and Defendants filed a joint proposed scheduling order on March 1, 2023. Dkt. 47. The Court entered the Scheduling Order the same day it entered the Protective Order. Dkt. 49. Among other deadlines, and germane here, the Court set the following:

- Deadline for Rule 26(a)(1) disclosures – March 14, 2023;

- Deadline to serve Infringement Contentions, Claim Chart(s), and produce accompanying documents – June 8, 2023;

- Deadline to serve Response to Infringement Contentions and produce accompanying documents – July 21, 2023;

- Deadline to serve Invalidity Contentions and Claim Chart(s) and produce accompanying items of prior art – July 21, 2023; and

- Deadline to serve Response to Invalidity Contentions and Claim Chart(s) and produce accompanying documents – September 1, 2023.

*Id.* at pp.4-5. Moreover, the various claim construction deadlines begin September 29, 2023, and continue through December 2023, when the anticipated claim construction, or *Markman*, hearing will be held. *Id.* at pp.5-6. Additional discovery deadlines are set in 2024 and 2025. *Id.* at p.7.

On June 1, 2023, pursuant to the Scheduling Order, the parties filed their Joint Status Report. Dkt. 57. According to the Joint Status Report (Report), Defendants notified Plaintiff that the source code utilized on its alleged infringing products was available for review on May 9, 2023, but as of the Report, Plaintiff had not yet reviewed the source code. *Id.* at p.1. Per the Report, Plaintiff served its (unsigned) initial disclosures on April 13, 2023, almost a full month after the deadline to serve its initial disclosures had passed. *Id.* at p.2. In addition, Plaintiff's initial disclosures

also contained references to a patent that has never previously been mentioned in this case. *Id.* While Plaintiff apparently committed to correct its initial disclosures, it had not done so as of June 1, 2023. *Id.* Additionally, Plaintiff had not produced any documents in response to Defendants' discovery requests, and its interrogatory responses were a subject of contention. *Id.*

Plaintiff timely served Defendants with Plaintiff's infringement contentions on June 8, 2023. Dkt. 58, p.4. Then, on June 22, 2023, Defendants filed their Petition for *Inter Partes* Review of United States Patent No. 9,392,302 Pursuant to 35 U.S.C. §§ 311-319, 37 C.F.R. § 42 (IPR Petition), with the Patent Trial and Appeal Board (PTAB). *Id.* at p.5.

On June 30, 2023, Defendants filed the subject Stay Motion. *Id.* Defendants attached an email from Plaintiff in which Plaintiff stated it opposed the Motion to Stay prior to the IPR Petition being accepted by the PTAB. *See id.* at Ex. A, p.1. In the Stay Motion, Defendants further contend Plaintiff has not yet remedied its purported discovery failures. *Id.* at pp.3-4. Noteworthy, Plaintiff never filed a response opposing the Stay Motion. *See* Dkt. 60 (arguing that the Court should now consider the Stay Motion to be unopposed).

## II.   LEGAL STANDARD FOR THE STAY MOTION

### A. *Inter Partes* Review

Congress implemented the *inter partes* review (IPR) process to provide parties with an alternative to expensive, lengthy litigation in the courts to challenge the

validity of patents. *See Smith Sport Optics, Inc. v. Burton Corp.*, 601 F. Supp. 3d 936, 939 (D. Colo. 2022) (citing H.R. Rep. No. 96-1307, pt. 1, at 2 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 6460, 6463). IPR is, nevertheless, an adversarial process. *Id.*

A third-party can petition for a claim to be determined as unpatentable pursuant to 35 U.S.C. §§ 102 or 103, but only on prior art based on patents or printed publications. 35 U.S.C. § 311. An IPR is time-barred, however, if a petition for IPR is filed later than one year after the petitioner is served with a complaint alleging infringement of the subject patent. *Id.* at § 315(b).

If an IPR petition is filed, the patent owner may submit a preliminary response to the petition within three months. 37 C.F.R. § 42.107. Within three months of a preliminary response being filed, or three months of the deadline to file such a preliminary response, the PTAB must determine whether to institute the IPR. 35 U.S.C. § 314(b). Thus, at the latest, an IPR petitioner should know no later than six months after filing an IPR petition whether the PTAB has initiated an IPR. If the PTAB institutes an IPR, the PTAB's decision shall be issued within a year of beginning the IPR, although that time may be extended for an additional six months. *Id.* at §316(a)(11).

In order to commence the IPR, however, the PTAB must first determine "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." *Id.* at § 314(a). On the other hand, if an IPR is instituted, the petitioner challenging the patent is later estopped from arguing

"that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review." *Id.* at §315(e)(2).

## B. <u>Stays Pending IPR</u>

"The ability to stay cases is an exercise of a court's inherent power to manage its own docket." *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016) (citation omitted); *see also Cellect LLC v. Samsung Elecs. Co.*, No. 19-cv-00438-CMA-MEH, 2020 WL 3425166, at *2 (D. Colo. June 23, 2020). When considering whether to stay a case based upon an IPR, this District evaluates the following:

> (1) whether a stay will simplify the issues in question and streamline the trial; (2) whether discovery is complete and whether a trial date has been set; (3) whether a stay would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (4) whether a stay will reduce the burden of litigation on the parties and on the court.

*Cellect LLC*, 2020 WL 3425166, at *2 (quoting *eSoft, Inc. v. Blue Coat Sys., Inc.*, 505 F. Supp. 2d 784, 787 (D. Colo. 2007)). "No one factor is determinative, and the Court considers the totality of the circumstances." *Id.* Courts sometimes evaluate the first and fourth prongs simultaneously. *See eSoft*, 505 F. Supp. 2d at 787.

## III.   ANALYSIS OF THE STAY MOTION

The Court finds that, considering the totality of the circumstances in this matter, a stay is warranted until the PTAB resolves the IPR petition.

### A. <u>The Un-"Opposed" Status of the Stay Motion</u>

Defendants represented to the Court that the Stay Motion was opposed, as

7

they should have in light of Plaintiff's counsel's email stating, "I have conferred and we are opposed. If instituted on claims, we would likely agree to a stay." Dkt. 58, p.1 & Ex. A, p.1. Despite its representation to Defendants that it opposed the Stay Motion, *Plaintiff never filed a response brief*. Thus, the Court treats the Stay Motion as unopposed. *See Beatty Grp. LLC v. Great W. Ry. of Colo. LLC*, No. 19-cv-01089-PAB-KLM, 2019 WL 10250554, at *1 (D. Colo. July 30, 2019) (treating a motion as unopposed when no response brief was filed).[3]

---

[3] The Court is deeply troubled by Plaintiff's representation that it opposed the Stay Motion, and then did not bother to file a response opposing the Motion or a notice that it no longer opposed the Motion. Plaintiff's action has caused the Court to expend its resources addressing an opposed motion, as well as resulting in Defendants' preparing their Response to Infringement Contentions and their Invalidity Contentions. *See* Dkt. 60, p.3. Plaintiff's lack of conferral indicates to the Court that Plaintiff is not taking seriously its duty to confer. *See* D.C.COLO.LCivR 7.1(a); *and see* Crews Practice Standard § F.1.

Moreover, the Court notes that Plaintiff has not undertaken its obligations with appropriate gravity. For example, Plaintiff violated the Scheduling Order, *see* Dkt. 49, § 6.c (March 14, 2023, deadline to make initial disclosures), by not making its initial (unsigned) disclosures until April 13, 2023, *see* Dkt. 57, p.2. And the Court notes that Plaintiff apparently acknowledged that it needed to supplement its disclosures, but still had not done so, as of June 30, 2023. *See* Dkt. 58, p.4.

Similarly, Plaintiff has repeatedly violated the Court's conferral requirements. Plaintiff apparently did not even respond to Defendants' conferral attempts regarding the proposed Protective Order. *See* Dkt. 44, p.1 ("Despite DISH's repeated requests for input or revisions to its proposed protective order, Plaintiff . . . failed to respond."); *see also* Dkt. 48 (Plaintiff's Notice of Nonopposition [sic] to Defendant's [sic] Motion to Enter a Protective Order, filed six days after Defendants filed their motion for protective order). Filing a "notice" noting non-opposition to a motion after the motion has already been filed does not qualify as conferring *prior to* a motion being filed.

Plaintiff and Plaintiff's counsel should take to heart the Federal Rules of Civil

**B. Stay Pending the IPR**

The Court finds that each of the four *eSoft* factors weighs in favor of issuing a stay in this case pending resolution of the IPR Petition.

**1. Simplification of Issues and Streamlining the Trial**

"When weighing this factor, courts consider (1) the role of the PTO's expertise in determining claim validity and the assistance such determination will [provide] the Court in its own analysis and (2) whether 'claims, arguments and defenses can be narrowed or entirely disposed of . . . .'" *Smith Sport Optic*, 601 F. Supp. 3d at 941 (citations omitted). Moreover, "IPR is conducted by administrative patent judges within the PTAB of the USPTO, and those judges are 'of competent legal knowledge

---

Procedure, the Local Rules, and the Court's Practice Standards, including Crews Practice Standard § F.1, which provides:

> I expect parties to take their conferral obligation seriously. Consistent with the Federal Rules of Civil Procedure and the Local Rules of Civil Practice, parties have an affirmative obligation to meet and confer prior to filing certain motions. The duty to meet and confer requires the parties to discuss the specific dispute at issue and the requested relief, preferably by telephone or face-to-face, and not solely through email or written correspondence, and provide opposing counsel a reasonable amount of time to respond prior to filing a motion. The duty to meet and confer also requires the parties to react timely and to be responsive over the course of conferring.

If Plaintiff's derelictions continue as they have done to date, the Court may recommend dismissal of this action, or other sanctions, for violating court orders and failure to prosecute.

and scientific ability.'" *Personalis, Inc. v. Foresight Diagnostics Inc.*, No. 22-cv-01913-CNS-NRN, 2023 WL 371931, at *3 (D. Colo. Jan. 24, 2023) (citing and quoting 35 U.S.C. §§ 6(b)(4) & 6(a)).

Here, the Court finds that resolution of the IPR Petition would simplify the issues the Court must decide and streamline trial. If the PTAB undertakes the IPR Petition, then the PTAB, with its "competent legal knowledge and scientific ability," *see* 35 U.S.C. §6 (a), has already made the finding that "there is a reasonable likelihood that [Defendants will] prevail with respect to at least 1 of the [patent] claims challenged in the [IPR] petition." *See* 35 U.S.C. § 314(a). Thus, even waiting for the PTAB's decision on whether to adjudicate the IPR Petition will provide this Court with information that will simplify the issues.

Moreover, if the PTAB accepts the IPR Petition for adjudication, then the possibility increases that some or all of the challenged patent claims may be eliminated or modified. *See id.* Consequently, if this case were not stayed, the parties and the Court could expend significant resources litigating aspects of the '302 Patent that the PTAB might later amend.

Further, waiting for the IPR, if instituted, would also simplify the issues for the Court because Defendants would be estopped in this case from asserting any invalidity grounds that Defendants asserted or could have asserted in the IPR Petition. *See id.* at § 315(e)(2). And by simplifying the issues in this case, trial would necessarily be streamlined. Thus, this prong of the analysis weighs in favor of a stay.

### 2.  __Status of Discovery and Whether Trial Has Been Set__

No trial has been set in this case. And the parties are still early in discovery. Consequently, this factor also weighs in favor of a stay.

As of the parties' Joint Status Report filed June 1, 2023, Defendants had served their initial disclosures. Dkt. 57, p.1. Plaintiff had served (unsigned) initial disclosures that it intended to amend, but had not yet done so. *Id.* at pp.1-2. Defendants had also served initial discovery requests, to which Plaintiff served responses (although it appears that the parties may disagree about the sufficiency of those responses). *Id.* at p.2. Plaintiff has not served any discovery requests. *Id.* at p.1. In addition, although Defendants have notified Plaintiff that the source code for Defendants' allegedly infringing products is available for Plaintiff's attorneys or expert to review, Plaintiff had not yet reviewed it. *Id.*

Defendants represented to the Court in the Stay Motion that the state of discovery was largely unchanged as of June 30, 2023. Dkt. 58, pp.3-4. At that time, the only significant update to discovery was that Plaintiff had provided its infringement contentions on June 8, 2023. *Id.* at p.4. Defendants also represented that Plaintiff had continued to tell Defendants that Plaintiff would revise its discovery disclosures and responses but had failed to do so.[4] *Id.*

Looking forward, much remains in the discovery process. The entire claim

---

[4] Because Plaintiff failed to file a response to the Stay Motion, the Court is left only with Defendants' explanation of events.

construction process, including a *Markman* hearing tentatively scheduled for December 2023, remains. Dkt. 49, § 8.g.-m. The parties must still exchange final infringement and invalidity contentions. *Id.* at § 8.n.-o. Fact discovery does not close until September 8, 2024, *id.* at § 8.p., and it appears that very little fact discovery has been accomplished at this point. Expert discovery does not close until May 2, 2025. *Id.* at § 8.r.

In short, much remains to be done on the discovery front. Thus, this prong of the stay analysis weighs in favor of a stay. *See Cellect*, 2020 WL 3425166, at *5 (granting stay when claim construction had already begun).

### 3. <u>Whether Undue Prejudice to Plaintiff or Tactical Advantage to Defendants Exists</u>

Similarly, the Court perceives no undue prejudice to Plaintiff nor any significant tactical advantage to Defendants. "Courts frequently find that mere delay caused by IPR is not prejudicial." *Id.* at *6 (citation omitted). Based upon the Court's perception that Plaintiff has not undertaken this litigation with the gravity the Court expects of all litigants, it is hard for the Court to see any undue prejudice here. Plaintiff did not bother to file a response to the Stay Motion to explain its purported opposition. And the parties should know within approximately four months if the PTAB will institute the IPR. To be sure, Plaintiff does not appear to be a direct competitor of Defendants, which further mitigates any prejudice that a stay might conceivably bring upon Plaintiff. *See id.* (no prejudice when parties do not compete in

the same market).

Similarly, the Court finds instituting a stay provides no significant tactical advantage to Defendants. While it is true that Defendants did not file the IPR Petition until shortly before the one-year period following the service of the original complaint tolled, Defendants filed their IPR Petition fourteen days after Plaintiff served its initial infringement claims on them. *See* Dkt. 58, p.5; *see also Cellect*, 2020 WL 3425166, at *6 (surveying courts on timing issue). Here, Defendants did not apparently know what the alleged infringement claims were until the Plaintiff served its initial infringement contentions on June 8, 2023. *See Cellect*, 2020 WL 3425166, at *6 (citing *ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 359 (D. Mass. 2015) (finding that filing IPR petitions within a week of the statutory deadline was not unreasonable, stating, "[i]t was reasonable for EMC to wait for ACQIS to choose which claims it intended to assert in the litigation before pursuing IPRs")). Consequently, this prong of the analysis also weighs in favor of granting a stay.

### 4. <u>Reduction of the Burden of Litigation on the Parties and the Court</u>

The parties would benefit from a stay because they could focus their attention on the IPR process, if the IPR Petition is instituted. They would also avoid the burden of simultaneously litigating in two forums with the risk of inconsistent or duplicative outcomes and obligations. This benefits both the parties and the Court and is consistent with Federal Rule of Civil Procedure 1. Thus, this prong favors a stay.

For all of these reasons, the Court finds a stay is warranted and GRANTS the Stay Motion—this matter is hereby stayed pending the PTAB's decision on the IPR petition, and if granted, pending the resolution of the IPR. That said, in order to avoid Plaintiff unnecessarily benefiting from the timing of this Order, the Court ORDERS Plaintiff to serve its Response to Invalidity Contentions and Claim Chart(s) and to produce accompanying documents on or before September 1, 2023, as set forth in the Scheduling Order.

## IV.    MOTION TO DISMISS

Having granted the Stay Motion, the Court DENIES WITHOUT PREJUDICE Defendants' Motion to Dismiss, Dkt. 31. Based on the above, the Court notes that, if the PTAB institutes the IPR, some or all of the patent claims may be rejected or affirmed, and Defendants may be estopped from raising arguments that were or could have been raised in the IPR. And even if the PTAB does not institute the IPR, the Court will be informed that the PTAB did not believe that even one of Defendants' challenges was reasonably likely to succeed. Thus, the IPR process will likely require amendment of the Complaint, and moots the pending Motion to Dismiss. Defendants may re-file their Motion to Dismiss, or file an amended motion to dismiss, upon the conclusion of the IPR process.

*       *       *

For the reasons shared above, the Court GRANTS the Stay Motion, Dkt. 58, and STAYS this case pending the PTAB's decision on the IPR petition, and if granted,

the resolution of the IPR. Notwithstanding the foregoing, the Court FURTHER ORDERS Plaintiff to serve its Response to Invalidity Contentions and Claim Chart(s) and to produce accompanying documents on or before September 1, 2023, as set forth in the Scheduling Order. The parties are FURTHER ORDERED to file a joint status report within seven days of the PTAB issuing its decision on whether to institute Defendants' IPR Petition, and if the IPR Petition is instituted, a second joint status report within seven days of resolution of the IPR. The Court FURTHER DENIES WITHOUT PREJUDICE the Motion to Dismiss, Dkt. 31. Defendants may refile a motion to dismiss, if so desired, following resolution of the IPR Petition and, potentially, the IPR.

DATED: August 28, 2023.

BY THE COURT:

S. Kato Crews
United States Magistrate Judge